FRANK W. ROBERTSON, *et al.*

*v.*

H. C. WARTH, *Judge of the Common Pleas Court of*

*Cabell County, West Virginia*

(No. 10125)

Submitted February 1, 1949.  Decided

March 1, 1949.

*Okey P. Keadle* and *McDaniel Purcell* for relators.

*T. W. Peyton* for respondent.

Haymond, President:

The petitioners, Frank W. Robertson and McDaniel Purcell, in this original proceeding, seek a writ of mandamus from this Court to require the defendant, the Honorable H. C. Warth, Judge of the Common Pleas Court of Cabell County, a court created by the Legislature, to reinstate and hear and determine a suit in equity which that court dismissed on the ground that it did not have jurisdiction of the case. The issues involved in the proceeding in this Court were heard and submitted upon the petition and upon the demurrer to the petition and the answer of the defendant. The facts are not disputed and the matter in controversy presents only questions of law.

The Common Pleas Court of Cabell County, originally known as the "Criminal Court of Cabell County", was created by an act containing twenty three sections passed by the Legislature in 1893. Chapter 28, Acts of the Legislature, 1893, Regular Session. The statute has been amended and new sections added by subsequent statutes enacted by the Legislature in 1903, 1905, 1917, 1921, 1931, and 1935. The pertinent sections of the present statute, as amended from time to time and which affect the question of the jurisdiction in equity of that court, are sections one and twenty four. , The relevant parts of these sections are in these words:

"Section 1. That the name 'Criminal court of Cabell county', as designated in chapter twenty-eight of the acts of one thousand eight hundred and ninety-three of the legislature of West Virginia, which created and established such court, be and the same is hereby changed, and said court shall hereafter be known and designated as the 'common pleas court of Cabell county' for the trial of crimes and misdemeanors and certain civil actions for the county of Cabell; * * *." Chapter 90, Acts of the Legislature, 1917, Regular Session.

"Sec. 24. The said court shall also have common and concurrent with the circuit court of Cabell County, supervision and control of all proceedings before justices and other inferior tribunals by mandamus, prohibition, and certiorari; original and general jurisdiction of all cases of habeas corpus, mandamus, quo warranto and prohibition; of all cases in equity including jurisdiction in equity to remove any cloud on the title to real property, or any part thereof, or any estate, right or interest therein, and to determine questions of title with respect thereto, without requiring allegations or proof of actual possession of the same; of all crimes and misdemeanors; and shall have appellate jurisdiction in all cases, civil and criminal, where an appeal, writ of error or supersedeas may be allowed to the judgment or proceedings of any inferior tribunal, and all such other authority and jurisdiction within the said Cabell County as is now or may hereafter be given or granted to the circuit court of Cabell County, except original jurisdiction in matters of law where the amount in controversy, exclusive of interest and costs, exceeds fifty dollars. * * *". Chapter 142, Acts of the Legislature, 1935, Regular Session.

Other sections of the act, as amended, which need not be set forth in detail, confer upon that court jurisdiction, within Cabell County, concurrent with the circuit court, of all felonies and misdemeanors committed within that county; supervision and control of criminal proceedings

before justices and the mayor of any incorporated city, town or village in the county, by appeal, mandamus, prohibition and certorari; and jurisdiction concurrent with the Supreme Court of Appeals or the Circuit Court of Cabell County to grant the writ of habeas corpus, as provided by statute, in any such proceeding involving the detention within that county of any person without lawful authority. The act also provides for the election, and prescribes the qualifications, the term of office and the salary, of the judge of the court and provides for appeals and writs of error to the circuit court in civil and criminal cases.

In April, 1948, the petitioners, Robertson and Purcell, as holders of one fifth of the capital stock of Hans Watts Realty Company, instituted, in the Common Pleas Court of Cabell County, a suit in equity against that corporation, its directors and all other stockholders, for the dissolution of the company, the principal office and the property of which were located in Cabell County. Upon the bill of complaint of the plaintiffs and the answer of the defendants, the suit was matured and set for trial. Evidence was introduced in open court and the trial was completed in September, 1948. At the direction of the judge, briefs were filed by counsel in behalf of the respective parties, and the case was submitted for decision. In December, 1948, the judge informed counsel for the parties to the suit that the jurisdiction of the Common Pleas Court of Cabell County was dependent upon the general equity jurisdiction conferred on that court by the act creating and establishing it, as amended; and that he was of the opinion that under the holding of this Court in the recently decided case of *McClung v. Eaton*, 131 W.Va. 754, 50 S.E. 2d 448, the jurisdiction in equity of that court did not extend to the then pending suit in equity. He then refused to proceed further in the hearing and the determination of the case and on December 13, 1948, entered an order dismissing the suit on the ground that the act of 1893, as amended, in so far as it undertook to confer general

equity jurisdiction on the Common Pleas Court of Cabell County, was violative of the Constitution of West Virginia, and that the court was without jurisdiction to entertain the suit. Following this action of the common pleas court the petitioners instituted this proceeding in mandamus in this Court by which they seek a writ requiring the defendant, as Judge of the Common Pleas Court of Cabell County, to set aside the order of dismissal of December 13, 1948, in the suit to dissolve the Hans Watts Realty Company, a corporation, to reinstate that suit upon the docket of that court, and to proceed with the consideration of the case to final decision and judgment.

The principal questions here presented for decision are: (1) Whether the Common Pleas Court of Cabell County, under the act of 1893, as amended, is a duly established court of limited jurisdiction within the provisions of Section 19, Article VIII, of the Constitution of this State; and (2), whether the statute, as amended, confers upon the common pleas court equitable jurisdiction to entertain and determine a suit to dissolve a corporation by virtue of the provision that it shall have concurrent jurisdiction, with the Circuit Court of Cabell County, of "all cases in equity * * *.", and of other provisions of the statute.

Though mandamus does not lie to control the action of an inferior court in exercising its discretion in the decision of a judicial proceeding, *State ex rel. United Fuel Gas Company v. De Berry,* 130 W.Va. 418, 43 S.E. 2d 408; *Ebbert v. Bouchelle,* 123 W.Va. 265, 14 S.E. 2d 614; *Wiley v. The County Court of Mercer County,* 111 W.Va. 646, 163 S.E. 441; *State ex rel. Buxton v. O'Brien and The County Court of Mason County,* 97 W.Va. 343, 125 S.E. 154; *Hall v. O'Brien,* 97 W.Va. 77, 124 S.E. 507; *Ryan v. The County Court of Monongalia County,* 86 W.Va. 40, 102 S.E. 731; *Rose v. O'Brien,* 80 W.Va. 280, 92 S.E. 343; *The Board of Supervisors of Mason County v. Minturn,* 4 W.Va. 300, it is firmly es-

tablished in this jurisdiction that the writ of mandamus will issue to compel an inferior court to exercise jurisdiction in a case of which by law it has jurisdiction which it erroneously refuses to assume. *State ex rel. United Fuel Gas Company v. De Berry,* 130 W.Va. 418, 43 S.E. 2d 408; *Conner v. Hudson,* 118 W.Va. 64, 188 S.E. 754; *Wiley v. The County Court of Mercer County,* 111 W.Va. 646, 163 S.E. 441; *State ex rel. Buxton v. O'Brien and The County Court of Mason County,* 97 W.Va. 343, 125 S.E. 154; *Ryan v. The County Court of Monongalia County,* 86 W.Va. 40, 102 S.E. 731; *Rose v. O'Brien,* 80 W.Va. 280, 92 S.E. 343; *French v. Bennett,* 69 W.Va. 653, 72 S.E. 746; *Wheeling Bridge & T. R'y. Company v. Paull,* 39 W.Va. 142, 19 S.E. 551. If, therefore, the statute, as amended, is valid as an enactment which creates and establishes a court of limited jurisdiction and its provisions relating to the general equity jurisdiction of the court are within the limitations prescribed by the Constitution, and are also sufficient to apply to a suit to dissolve a corporation, mandamus is the proper remedy to require the defendant, as Judge of the Common Pleas Court of Cabell County, to exercise the jurisdiction of that court to hear and determine the suit which he has refused to hear and determine.

The provisions of the Constitution of this State which bear upon the present controversy are Sections 12 and 19 of Article VIII. Section 12 contains this language: "The circuit court shall have the supervision and control of all proceedings before justices and other inferior tribunals, by mandamus, prohibition and certiorari. They shall, except in cases confined exclusively by this constitution to some other tribunal, have original and general jurisdiction of all matters at law where the amount in controversy, exclusive of interest, exceeds fifty dollars; of all cases of habeas corpus, mandamus, quo warranto, and prohibition; and of all cases in equity, and of all crimes and misdemeanors. They shall have appellate jurisdiction in all cases, civil and criminal, where an appeal, writ of error or supersedeas may be allowed to the judgment or proceedings of any inferior

tribunal. They shall also have such other jurisdiction, whether supervisory, original, appellate, or concurrent, as is or may be prescribed by law." The pertinent part of Section 19, relating to the creation by the Legislature of courts of limited jurisdiction, is in these words: "The Legislature may establish courts of limited jurisdiction within any county, incorporated city, town or village, with the right of appeal to the circuit court, subject to such limitations as may be prescribed by law; * * *". Consideration of the provisions of the act of 1893, as amended, indicates plainly that the Common Pleas Court of Cabell County is a court of limited jurisdiction within the meaning of the quoted provisions of Section 19. Its functions and its jurisdiction are restricted to the County of Cabell. This is clear from the provisions of sections one and twenty four of the act, as amended. The terms of the statute make manifest the legislative intent that it should have no power, outside the territorial limits of that county, in any matters committed to it. In this respect its jurisdiction is different from the jurisdiction conferred upon the Circuit Court of Cabell County which is not limited to that county by the terms of Section 12 of Article VIII of the Constitution. The power and the authority of the common pleas court with respect to judicial proceedings generally are, by the statute, declared to be concurrent with those of the circuit court within the county in which it is established. Another limitation expressly imposed by the statute upon its general jurisdiction is the withholding of original jurisdiction in matters of law where the amount in controversy, exclusive of interest and costs, exceeds fifty dollars. These express limitations, restricting its powers in general to their exercise within the County of Cabell and its original jurisdiction to matters of law in which the amount in controversy, exclusive of interest and costs, does not exceed fifty dollars, characterize the Common Pleas Court of Cabell County as the type of court mentioned and dealt with, and the establishment of which is authorized by, the provisions of Section 19 of Article VIII of the Constitution. The provisions of

the statute relating to its appellate jurisdiction and the procedure to be resorted to in that respect are in conformity to the provisions of Section 19 of Article VIII which deal with the right of appeal from a court of limited jurisdiction to the circuit court exercising jurisdiction over the territorial unit within which a court of limited jurisdiction may be established. The conclusion necessarily follows that the act of 1893, as amended, in so far as it creates the Common Pleas Court of Cabell County, is constitutional and that, as so established, that court is a duly constituted court of limited jurisdiction endowed by law with power and authority to exercise the jurisdiction conferred upon it by valid legislative grant within the territorial limits of that county. See *Morris v. Sevy,* 129 W.Va. 331, 40 S.E. 2d 874; *Slater v. Melton,* 119 W.Va. 259, 193 S.E. 185; *Locke v. County Court of Raleigh County,* 111 W.Va. 156, 161 S.E. 6; and *Rosin Coal Land Company v. Martin,* 81 W.Va. 33, 94 S.E. 358, for other instances in which this Court has recognized or sustained the constitutionality of acts establishing courts of limited jurisdiction in other counties in this State.

The provision of section twenty four of the act of 1893, as amended, relating to the general equity jurisdiction of the common pleas court, is that it "shall also have common and concurrent with the circuit court of Cabell County, * * *; original and general jurisdiction of all cases of habeas corpus, mandamus, quo warranto and prohibition; of all cases in equity * * *; * * * and all such other authority and jurisdiction within the said Cabell County as is now or may hereafter be given or granted to the circuit court of Cabell County, except original jurisdiction in matters of law where the amount in controversy, exclusive of interest and costs, exceeds fifty dollars." This language is comprehensive in its scope. The section contains several grants of jurisdiction, one of which expressly includes general jurisdiction of all cases in equity; and the final clause relating to jurisdiction confers upon that court, with only one

designated exception, all other authority and jurisdiction, *within Cabell County*, that is now or may hereafter be given to the circuit court of that county. The provisions of this section of the statute were obviously intended by the Legislature to be, and they are, both a grant of general jurisdiction in equity to the Common Pleas Court of Cabell County and a limitation which restricts its exercise to the territory comprising that county. The manifest effect of the broad language of the foregoing section is to confer upon that court general jurisdiction in equity and that jurisdiction necessarily includes power and authority to entertain and decide the suit which the defendant dismissed by the order of December 13, 1948, and now refuses to hear and determine.

This case is readily distinguishable from and is not controlled by the decision of this Court in *McClung v. Eaton*, 131 W.Va. 754, 50 S.E. 2d 448, which, according to the undenied allegations of the petition, furnished the basis for the refusal of the defendant to adjudicate the questions involved in the suit lately pending in the common pleas court. In the *McClung* case this Court was required to construe an act of the Legislature which established the Domestic Relations Court of Cabell County, Chapter 168, Acts of the Legislature, 1921, Regular Session, as amended by Chapter 154, Acts of the Legislature, 1939, Regular Session, to determine the effect of the provision of that statute which, in Section 2 of the amendatory act, after conferring jurisdiction upon that court in certain specifically designated suits and proceedings, declared that it should "also have general equity jurisdiction, with power to grant injunctions in matters involving the protection of the person or of property but not in matters involving the enforcement of criminal laws, in labor disputes, or the abatement of nuisances. And that the proceedings and modes of procedure and power and jurisdiction conferred by law upon the circuit court or common pleas court in any and all of said matters and causes are hereby conferred

upon and shall be exercised by said domestic relations court." In holding that the above quoted language did not give general equity jurisdiction to that court to entertain a proceeding involving the custody of the infant child of the petitioner and her husband, between whom no suit for divorce or other proceeding relating to such custody was then pending in that court, this Court said in Point 3 of the syllabus: "The equity jurisdiction conferred on the Domestic Relations Court of Cabell County, by Section 2, Chapter 154, Acts of the Legislature, 1939, is limited to suits and proceedings in said court over which it was specifically given jurisdiction by said section."

In different parts of the opinion in the *McClung* case these statements appear: "While the language of the 1939 amendment is broad and sweeping, we cannot bring ourselves to believe that it was the intention of the Legislature to confer, or that the language employed did confer, upon the Domestic Relations Court of Cabell County unlimited equity jurisdiction as to all matters other than those specifically excepted from the grant of jurisdiction and power. * * * To say that said court, created by the Legislature under a constitutional provision which only permits the creation of courts of limited jurisdictions, and with territorial limitations to a particular county, should be held to be a court without limitation, and equal in its equity jurisdiction to that exercised by the circuit courts of the State having state-wide jurisdiction, and making it in such respects the equal of the circuit court, except in the specific limitations contained in the act, goes beyond, as we think, any conceivable intent of the Legislature. * * * We do not believe the Legislature had the power, under our Constitution, to give to any court of limited territorial jurisdiction, created for a special purpose, and to handle special types of cases, general equity power, beyond those necessary to make effective the powers granted." It is clear that these expressions relate to the meaning and the effect of the provision of the statute then under review in determining the extent

of the general equity jurisdiction conferred upon the domestic relations court by the amendment to the act by which it was established. Though the effect, upon the constitutionality of the particular provision of the statute of a construction different from that given the language then before this Court was considered and discussed, no question of the constitutionality of the statute was decided in the *McClung* case. As already indicated, the controlling point in that case involved a question of statutory construction, and the language in the opinion bearing upon that issue has no direct application to the constitutional question which arises in this proceeding. In considering the quoted statements in the opinion in the *McClung* case as authority to support the view that the Common Pleas Court of Cabell County was without jurisdiction to entertain or hear and determine a suit in equity to dissolve a corporation, the distinguished and learned judge of that court has entirely misconceived their intended purpose and effect.

For the reasons stated, the writ of mandamus, as prayed for in the petition, is awarded commanding the Judge of the Common Pleas Court of Cabell County forthwith to set aside the dismissal order of December 13, 1948, to reinstate upon the docket of that court the suit instituted by the petitioners against Hans Watts Realty Company, a corporation, and certain of its stockholders and directors, and to proceed in due course to hear and determine the issues which may properly arise in that litigation.

*Writ awarded.*